UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| COREY D. YOUNG,<br><br>                              Plaintiff,<br><br>       v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,<br><br>                              Defendants. | Case No. 3:18-cv-05681-RBL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for January 31, 2020 |

The District Court referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge Theresa L. Fricke. Presently pending before the Court is Defendants State of Washington Department of Corrections ("DOC") and Kathryn D. Kallenbach's motion for summary judgment ("Motion"). Dkt. 21.[1] The Court finds Plaintiff failed to administratively exhaust his federal section 1983 claims. Accordingly, the Court recommends the Defendants' motion (Dkt. 21) be GRANTED with respect to all federal section 1983 claims and that those claims be DISMISSED WITHOUT PREJUDICE. As Plaintiff does not have a remaining federal claim, the Court recommends declining to the exercise supplemental jurisdiction over the remaining state law negligence claims and

---

[1] It appears that defendant John Doe Kallenbach has not been identified or served in this action, and the Motion was not brought on behalf of Defendant John Doe Kallenbach. At all times in this Report and Recommendation, "Defendant Kallenbach" refers to Kathryn Kallenbach and "Defendants" refers to the DOC and Kathryn Kallenbach.

REPORT AND RECOMMENDATION - 1

that those claims be REMANDED to the Superior Court of the State of Washington for Pierce County, for consideration of those claims and that this case be CLOSED.

## I.   Background

Plaintiff, an inmate housed at the Coyote Ridge Corrections Center ("CRCC") who is proceeding with counsel, alleges Defendant Kallenbach violated his constitutional rights when she poured hot coffee down his back while he was working on the "A Line" in the kitchen at CRCC ("the incident"). Dkt. 1. Plaintiff also raises state law claims of negligence. *Id.*

Plaintiff previously litigated an action in this Court in which he raised the same section 1983 claims and state law negligence claims related to the same incident. *See Young v. State of Washington Dept. of Corrections*, No. 17-cv-5572, Dkts. 26, 27, 2018 WL 2298501 (W.D. Wash., May 21, 2018). In this first action Plaintiff's section 1983 claims were dismissed without prejudice at summary judgment based on Plaintiff's failure to exhaust administrative remedies. *Id.* The Court also declined to exercise supplemental jurisdiction over Plaintiff's state law negligence claims and likewise dismissed those claims without prejudice. *Id.*

Plaintiff commenced the instant action in to the Superior Court of the State of Washington for Pierce County under case number 18-2-09103-4 alleging the same section 1983 and state law negligence claims alleged in the prior action. *See* Dkt. 1. The case was subsequently removed to this Court. *Id.* Defendants now move for summary judgment in the instant action arguing again that Plaintiff's section 1983 claim must be dismissed because he has failed to exhaust his administrative remedies. Dkt. 21. Defendants also argue Plaintiff's state law negligence claims should be dismissed

REPORT AND RECOMMENDATION - 2

because Defendant Kallenbach admits she intentionally, rather than negligently, poured coffee onto the Plaintiff. *Id.*

## II.     Relevant Legal Standards

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

REPORT AND RECOMMENDATION - 3

1  42 U.S.C. § 1997e(a). Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v.*
2  *Churner*, 532 U.S. 731, 739 (2001). The mere fact a plaintiff has filed an initial grievance
3  under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a
4  plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate
5  litigation. *See id.* at 736-41; *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). Even when
6  the prisoner seeks relief not available in grievance proceedings, notably money damages,
7  exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at 741. If a claim is not
8  exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir.
9  2002).

10  Failure to exhaust administrative remedies is properly brought as a summary
11  judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the
12  defendant proves there was an available administrative remedy and the offender failed to
13  exhaust the available remedy, the burden shifts to the plaintiff. The plaintiff must show
14  there was something about his particular claim which made the "existing and generally
15  available administrative remedies effectively unavailable to him." *Williams v. Paramo*, 775
16  F.3d 1182, 1191 (9th Cir. 2015) (*citing Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5
17  (9th Cir. 1996)).

18  **III.   Discussion**
19      **A.   Failure to Exhaust**
20  Defendants move for summary judgment on Plaintiff's section 1983 civil rights
21  claims on the grounds that Plaintiff failed to exhaust his administrative remedies. Dkt. 22.
22  The parties submit the same relevant evidence and make the same arguments as were
23  made on the motion for summary judgment in the prior action and it is undisputed that

Plaintiff has made no further attempts to exhaust his administrative remedies since the filing of the first action. *Compare* Dkts. 21-26 with *Young v. State of Washington Dept. of Corrections*, No. 17-cv-5572, Dkts. 15-21, 26, 27. As such the Court finds no reason to reach a different conclusion from that reached in Plaintiff's first case on the issue of exhaustion and reasserts the same findings and conclusions here based upon the nearly identical record before the Court in this case.[2]

Defendants' evidence shows prisoners in the custody of the Washington State DOC may file administrative grievances pertaining to several routine matters, including conditions of confinement, conduct of staff, or retaliatory conduct. *See Young v. State of Washington Dept. of Corrections*, No. 17-cv-5572, Dkts. 26, 27, 2018 WL 2298501 (W.D. Wash., May 21, 2018); Dkt. 22, Caldwell Dec. Prisoners may also file emergency grievances when there is a potentially serious threat to the life or health of an inmate or staff member, or involve a potential threat to the orderly operation of a facility. *Id.* Under DOC policy, the grievance procedure consists of four levels of review. *Id.* Both routine and emergency grievances are initially filed at Level 0. *Id.* At Level 0, the facility's "grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance." *Id.* After satisfactory review of the informal grievance at Level 0, the grievance coordinator accepts routine and

---

[2] The Court notes that defendants assert in reply to their motion that plaintiff should be precluded, based on the doctrine of collateral estoppel, from raising the same section 1983 claims in this action as were dismissed without prejudice in the prior action based on plaintiff's failure to exhaust his administrative remedies. Dkt. 26. However, because defendants raise this argument explicitly for the first time in reply, rather than in their motion, the Court declines to address this issue. *See, e.g., Moran v. Beale*, No. SACV0701057MMMRNBX, 2008 WL 11409862, at *6 (C.D. Cal. May 19, 2008) ("as a general rule, the court will not consider arguments raised by a defendant for the first time in reply."); *Docusign, Inc. v. Sertifi, Inc.*, 468 F.Supp.2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived," *citing United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000) ); *Thompson v. Comm'r*, 631 F.2d 642, 649 (9th Cir. 1980).

REPORT AND RECOMMENDATION - 5

emergency grievances as formal grievances at Level I and complaints alleging staff misconduct at Level II. *Id.*

If the grievance proceeds beyond Level 0, the grievance coordinator issues a formal response at Level I. *Id.* A prisoner may appeal the denial of either a routine or emergency grievance to the superintendent of the facility at Level II. *Id.* "Inmates may appeal all Level II responses to [DOC] headquarters in Tumwater, where they are re-investigated" at Level III. *Id.* Level III is the final level of review and a Level III response cannot be appealed. *See id.*

An inmate has twenty "working days from the date of an incident to file a grievance;" however, exceptions to the filing deadlines are allowed if there is a valid reason for the delay. *Id.* An inmate then has five working days from the time he receives a response to Level I and II grievances to file an appeal. *Id.*

Here, evidence shows Plaintiff filed an offender complaint on July 24, 2014, two days after the incident, complaining that Defendant Kallenbach poured hot coffee down his back. *See Young*, No. 17-cv-5572, Dkts. 26, 27; Dkt. 22, at 44. Plaintiff requested the incident be reported in Defendant Kallenbach's and non-party Ms. Elder's central files. *Id.* The grievance was processed as a Level II staff conduct complaint. *Id.* The grievance was investigated and, on August 20, 2014, Plaintiff received a response. *Young*, No. 17-cv-5572 Dkts. 26, 27; Dkt. 22, at 45. The grievance response stated, in relevant part, that Plaintiff would not be notified of any employment actions that might take place due to the incident because of confidentiality laws. *Id.* The response also stated Plaintiff's allegation that he was burned was "unsubstantiated." *Id.*

REPORT AND RECOMMENDATION - 6

1    Eighteen days later, on September 7, 2014, Plaintiff filed a second initial offender
2    complaint complaining that he had been burned when Defendant Kallenbach poured hot
3    coffee down his back. *Young*, No. 17-cv-5572 Dkts. 26, 27; Dkt. 22, at 46. Plaintiff
4    requested medical treatment and monetary compensation. *Id*. On September 15, 2014,
5    the grievance coordinator responded stating the grievance was being returned because
6    the issue was not grievable due to the fact the complaint was investigated and closed at
7    Level II on August 20, 2014. *Id*. The response stated Plaintiff had five days to continue
8    the grievance and had "missed that timeframe." *Id*.

9    While unclear from the evidence, it appears Plaintiff resubmitted the September 7,
10   2014 grievance. *Young*, No. 17-cv-5572 Dkts. 26, 27; Dkt. 22, at 47. The grievance
11   coordinator responded to the grievance on October 12, 2014, stating Plaintiff's complaint
12   had been addressed and closed on August 20, 2014 at Level II. *Id*. The response also
13   stated the complaint would not be reopened. *Id*.

14   On October 31, 2014, Plaintiff filed a Level III appeal complaining that the
15   grievance coordinator's response to his Level II appeal failed to meaningfully respond to
16   his complaints. Dkt. 22, at 48. Plaintiff again asked for free medical treatment and
17   compensation for his injuries. *Id*. The grievance was not signed. *Id*. On November 12,
18   2014, the grievance was returned to Plaintiff because it was "not a grievable issue." *Id*.
19   The explanation stated that Plaintiff's signature was mandatory and that his complaint
20   was completed at Level II on August 20, 2014. *Id*. Plaintiff was told he needed to have
21   appealed the Level II decision within five days and he failed to meet that criteria so his
22   issue was not grievable. *Id*. […]

23
24
25

REPORT AND RECOMMENDATION - 7

Based on the evidence detailed above, the Court finds, as it did in plaintiff's prior action, that Defendants have carried the initial burden of showing the absence of exhaustion in this case. *Young*, No. 17-cv-5572 Dkts. 26, 27. The undisputed evidence presented by Defendants show there was a grievance procedure in place at the time of the incident complained of in the Complaint. *Id.* Plaintiff was aware of the grievance process and participated in the grievance process while housed at CRCC. *Id.* Plaintiff filed an initial complaint, which was processed as a Level II grievance. *Id.* When he received his response to the grievance, he did not timely file a Level III appeal. *Id.* Plaintiff, therefore, failed to properly complete the entire grievance process for the claims alleged in his Complaint. *Id.*

The burden now shifts to Plaintiff, "who must show that there is something particular in his case that made the existing and generally available remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Id.*; *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-25 (9th Cir. 2010); *Young*, No. 17-cv-5572 Dkts. 26, 27. "The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Paramo*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172); *Young*, No. 17-cv-5572, Dkts. 26, 27. The Supreme Court recently held there are three circumstances in which an administrative remedy is not capable of potential relief:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative

REPORT AND RECOMMENDATION - 8

>scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016); *Young*, No. 17-cv-5572 Dkts. 26, 27.

Plaintiff contends he exhausted his administrative remedies because (1) the DOC had a full and fair opportunity to decide Plaintiff's case on the merits and (2) proceeding further in the administrative process would have been fruitless once the DOC decided Plaintiff had not been burned. *Young*, No. 17-cv-5572 Dkts. 26, 27; Dkt. 24, at 9-10.

First, Plaintiff asserts the DOC had a full and fair opportunity to decide Plaintiff's case on the merits because Plaintiff grieved the incident and an investigation was completed. *Id.* Plaintiff contends the fact that he did not file a timely Level III appeal "does not change the fact that the DOC had a full and fair opportunity to address [Plaintiff's] grievance." *Id.*

The law requires an inmate to exhaust all administrative remedies, "which means using all steps that the agency holds out, and doing so *properly*[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal quotations omitted) (emphasis in original); *Young*, No. 17-cv-5572. The DOC requires an inmate to complete all steps of the grievance process, including filing a timely Level III appeal. *Young,* No. 17-cv-5572, Dkts. 26, 27; Dkt. 22. Plaintiff did not file a timely Level III appeal and therefore he did not provide DOC headquarters with a full and fair opportunity to re-investigate his grievance at Level III. *Young*, No. 17-cv-5572, Dkts. 26, 27. The result of Plaintiff's grievance may have changed if he would have filed a Level III grievance. *Id.* For example, during the re-investigation, DOC headquarters may have determined Plaintiff's allegation that he was

REPORT AND RECOMMENDATION - 9

burned was substantiated and taken different action. *Id.* Because Plaintiff did not provide the DOC with a full and fair opportunity to resolve his complaint, the Court finds, as it did in the prior action, Plaintiff has not shown his failure to properly exhaust should be excused.[3] *Id.*

Second, Plaintiff contends, "once the DOC determined that [Plaintiff] had not been burned by [Defendant] Kallenbach, any further relief he sought would be entirely fruitless." *Young*, No. 17-cv-5572, Dkts. 26, 27; Dkt. 24, at 10. Plaintiff maintains he received all the relief he was requesting and therefore had nothing left to exhaust. *Id.* In his first grievance, Plaintiff requested the incident be documented in Defendant Kallenbach's and Ms. Elder's personnel file. *Young*, No. 17-cv-5572, Dkts. 26, 27; *see* Dkt. 22, at 45. Plaintiff was told he would not be notified of any employment actions taken regarding the incident. *Id.* He was also told the allegation that he was burned was unsubstantiated. *Id.*

A prisoner is not required to appeal favorable grievance decisions when he has won all the relief available. *See Levy v. Washington State Dept. of Corrections*, 2009 WL 1107698 (W.D. Wash. April 23, 2009); *Young*, No. 17-cv-5572, Dkts. 26, 27. However, here, the evidence fails to show Plaintiff received all the requested relief available. *Young*, No. 17-cv-5572, Dkts. 26, 27. In the response to the first grievance, Plaintiff was told he would not receive notification of employment decisions and that his allegations of harm were unsubstantiated. *Young*, No. 17-cv-5572, Dkts. 26, 27. A memo was not placed in

---

[3] In arguing the DOC had a full and fair opportunity to resolve Plaintiff's complaint, Plaintiff cited to cases that found exhaustion occurred when prison officials declined to enforce a procedural bar and addressed a grievance on the merits. *Young*, No. 17-cv-5572, Dkt. 26, 27; Dkt. 24. However, in this case, prison officials did not ignore a procedural bar and decide Plaintiff's grievances on the merits. *Young*, No. 17-cv-5572, Dkts. 26, 27. Rather, Plaintiff's initial grievance was responded to at Level II. *Id.* Plaintiff did not appeal the Level II decision. *Id.* Plaintiff then filed additional grievances, which were all denied for procedural reasons. *Id.* Plaintiff fails to provide evidence showing prison officials disregarded procedural bars and considered Plaintiff's procedurally flawed grievances on the merits. *Id.*

1    Defendant Kallenbach's file until September 10, 2014, twenty-one days after Plaintiff
2    received the grievance response and fourteen days after the date Plaintiff's appeal of the
3    Level II grievance was due. *Id.*; Dkt. 23, at 5. There is also no evidence a report of the
4    incident was ever documented in Ms. Elder's file. *Young*, No. 17-cv-5572, Dkts. 26, 27.
5    Thus, Plaintiff did not receive all the relief he requested. *Id.* Further, if Plaintiff disagreed
6    with the findings in the grievance response, as he alleges, it would not have been futile to
7    appeal because a re-investigation at Level III could have changed the result of the Level II
8    grievance. *Id.* Therefore, the Court finds, as it did in the prior action, that Plaintiff has not
9    shown it would have been fruitless to complete the grievance process. *Id.*; *see Booth*, 532
10   U.S. 731, 741 (2001) ("Congress has mandated exhaustion . . . regardless of the relief
11   offered through administrative procedures"); *Levy*, 2009 WL 1107698 at *7-8 (finding the
12   plaintiff failed to exhaust when he received the relief he requested at Level II, but
13   indicated he wanted pursue his grievance because he wanted to sue someone; thus,
14   showing there were additional remedies he sought); *Hazelton v. Alameda*, 358 F.Supp.2d
15   926, 934-35 (C.D. Cal. 2005) (finding the plaintiff had failed to exhaust all of his available
16   administrative remedies when it "possible that he might have obtained additional relief if
17   he had pursued his appeal through" the highest "level of formal review, even if he was
18   precluded from obtaining" the particular form of relief he sought).
19       As Plaintiff did not fully follow the proper grievance procedures available at
20   CRCC, he has not overcome Defendants' showing that he failed to exhaust
21   administrative remedies available to him. *Young*, No. 17-cv-5572, Dkts. 26, 27.
22   Therefore, the Court concludes, as it did in the prior action, that Plaintiff failed to
23   properly exhaust his section 1983 claims and recommends the section 1983 claims be
24
25

dismissed without prejudice. *Id.*; *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled on other grounds by Albino,* 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice."); *Carrea v. California*, 551 F.App'x 368, 369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because the proper remedy for non-exhaustion is dismissal without prejudice).

### B.   Negligence Claim

The Court has determined Plaintiff's federal claims must be dismissed for failure to exhaust. Therefore, the only remaining claims raised in the complaint are Plaintiff's state law negligence claims. *See* Dkt. 1.

A district court may exercise supplemental jurisdiction over state law claims arising from the same set of operative facts that supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009) (citing 28 U.S.C. §§ 1367(a), (c)); *Artis v. District of Columbia*, No. 16-460, 2018 WL 491524, 583 U.S. ---- (2018). However, "the federal court should decline the exercise of jurisdiction" when "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988); *see also* 28 U.S.C. § 1367(c).

As stated above, the Court finds Plaintiff has failed to exhaust the administrative remedies available to him regarding his federal claims and these claims must be dismissed. As there are no federal claims remaining, the Court finds it appropriate to decline the exercise of supplemental jurisdiction over the remaining state law negligence claims. Accordingly, the Court recommends the remaining state law

negligence claims be remanded to the state court, the Superior Court of the State of Washington for Pierce County, for further proceedings on those claims. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637 (2009) (a district court may properly remand a removed case to state court after declining to exercise supplemental jurisdiction over the state law claims).

**IV.   Conclusion**

For the above stated reasons, the Court recommends Defendants' Motion for Summary Judgment (Dkt. 21) be GRANTED with respect to all federal section 1983 claims and that those claims be DISMISSED WITHOUT PREJUDICE. The Court recommends declining to the exercise supplemental jurisdiction over the remaining state law negligence claims and that those claims be REMANDED to the Superior Court of the State of Washington for Pierce County, and this case be CLOSED.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **January 31, 2020**, as noted in the caption.

Dated this 14th day of January, 2020.

Theresa L. Fricke
United States Magistrate Judge